**THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**CASE NO. 5:22-cv-00044-M**

| | |
|---|---|
| **AMY LOHRENZ, MAJOR MICHAEL LOHRENZ, MGL, MML, MML, & MML,** | |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT** |
| **BRAGG COMMUNITIES, LLC, CORVIAS MANAGEMENT-ARMY, LLC, and CORVIAS MILITARY LIVING, LLC** | |
| **Defendants.** | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    LEGAL STANDARD ............................................................................................4

III.   ARGUMENT .......................................................................................................4

   A. Plaintiffs' Newly-Asserted Claims Are Facially Deficient, and Plaintiffs Failed to Correct Pleading Deficiencies in the Previously-Asserted Counts. ...................................5

     i.    Plaintiffs' SAC Continues to Contain Mere Generalized Grievances And Thus Fails to State a Claim Against Any Defendant. ............................................5

     ii.   Plaintiffs' New Claim for a Violation of the UDTPA (Count IV) Fails and is Time-Barred. .............................................................................8

     iii.  Plaintiffs' New Claim for Violation of the NC RRAA (Count V) Fails. ...................11

     iv.  Plaintiffs' New Claim for Private Nuisance (Count VI) Fails. ...................................12

     v.   Plaintiffs' New Claim For Breach of Implied Covenant of Good Faith and Fair Dealing (Count VII) Fails. .........................................................................13

     vi.  Plaintiffs' New Claim For Breach of Contract (Count VIII) Fails. ...........................14

     vii. Plaintiffs Have Failed to Correct their Futile Claims For Conclusory Negligence (Count I), Gross Negligence (Count II), and Battery (Count III). .............................15

B.    Granting Plaintiffs' Motion Will Cause Further Undue Delay and Prejudice Defendants. .......................................................................................................18

IV.   CONCLUSION..................................................................................................20

Defendants Bragg Communities, LLC ("Bragg"), Corvias Management-Army, LLC ("Corvias Management"), and Corvias Military Living, LLC ("Corvias Military") (collectively "Defendants"), by and through their undersigned attorneys, submit this memorandum of law in opposition to Plaintiffs' motion for leave to amend the First Amended Complaint ("FAC").

## I. INTRODUCTION

Plaintiffs are former tenants of military family housing at Fort Bragg. Plaintiffs' initial complaint was filed on December 10, 2021 and asserted claims of negligence, gross negligence, and battery against Defendants. Dkt. 1-3, ¶¶ 23-46. Defendants moved to dismiss the Complaint, which relied on conclusory allegations that: (1) Defendants are collectively "the landlord/owners" of the properties at issue, and (2) Defendants are liable to Plaintiffs for failing to adequately maintain the properties and remedy certain alleged habitability issues. Dkt. 8; 9.

In response to Defendants' Motion to Dismiss and prior to the conclusion of briefing, Plaintiffs filed the FAC. Dkt. 18. The FAC included some additional factual allegations and photographs, but failed to address the fundamental deficiencies in the original Complaint. Specifically, Plaintiffs continued to merely recite the elements of their causes of action without corresponding allegations of facts sufficient to state plausible claims for relief against each of the Defendants. Plaintiffs continued to lump together all of the Defendants even though they are separate and independent companies with distinct roles relating to Fort Bragg, and only one Defendant was a party to the Resident Occupancy Agreement ("ROA") with the Plaintiff. Because the FAC failed to meet the standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Defendants again moved to dismiss Plaintiffs' claims for failure to state a claim. Dkt. 28, 29. On May 18, 2022, the briefing regarding Defendants' Motion to Dismiss the FAC was submitted to Chief Judge Richard E. Myers, II.

1

Now, over seven months into the case and over a month after the motion to dismiss briefing was submitted to the Court, Plaintiffs move for leave to file a Second Amended Complaint ("SAC"). (Dkt. 42, 43, 45, 46). The SAC carries forward the very same materially-deficient allegations of the FAC while proposing additional unsupported claims for private nuisance, unfair and deceptive trade practices, violation of the North Carolina Residential Rental Agreements Act ("RRAA"), breach of the implied covenant of good faith and fair dealing, and breach of contract. Although Plaintiffs suggest that they are simply adding a few "run-of-the-mill" landlord-tenant claims, Plaintiffs fail to inform the Court that these new claims seek to quietly expand this case from a landlord-tenant dispute into a wide-ranging fishing expedition into Defendants' business practices.

This Court has held that leave to amend should be denied when amendment would be prejudicial or futile. Both standards are met here. Amendment would be futile because: (1) Plaintiffs have failed to correct any of the previously-identified pleading deficiencies, and (2) Plaintiffs' newly-asserted claims are deficient and fail to state a claim. Plaintiffs' newly-added claims are, in part, barred by the applicable statute of limitations. The SAC includes new allegations that the Defendants deceptively marketed their lease offerings to Plaintiffs. However, Plaintiffs leased their home on March 30, 2018, and allegedly became aware of the purported issues with the home "shortly" thereafter. Any claim related to these marketing activities falls outside the applicable statute of limitations and does not arise out of the conduct, transaction, or occurrence set out in the original pleading. Plaintiffs cannot relate back to the original date of the original pleading and any effort to amend the pleadings to include these time-barred claims should be denied. Plaintiffs have now had three separate chances to amend their Complaint, but they have continually failed to address any of the fatal deficiencies identified by Defendants. All of the claims

in the SAC continue to fail to meet the standard established by *Twombly* and *Iqbal* and will be subject to dismissal if leave to amend is granted.

Moreover, amendment would be prejudicial because these newly-asserted claims attempt to raise new theories that would vastly expand this case from "an Action for personal injury and personal property damage caused by water intrusion and elevated indoor relative humidity … in Plaintiffs' residence in Harnett County, North Carolina," (FAC ¶ 49) into a fishing expedition regarding Defendants' leasing, marketing, customer service, repair, and maintenance services. *See, e.g.*, SAC ¶ 76. Plaintiffs now allege, for the first time, that Defendants "underpaid outside repair, maintenance, and service vendors, chose ill-equipped and poorly trained vendors, and imposed limits on the abilities of outside vendors to engage in repair and maintenance services," (SAC ¶ 83) that Defendants "unfairly and deceptively marketed lease offerings," that Defendants "conduct[ed] … resident satisfaction services that were inaccurate and misleading," ( SAC ¶ 76) and that Defendants "maintain[ed] customer service, repair, and maintenance records and data that were inaccurate." SAC ¶ 76. None of these new expansive allegations and theories were previously asserted by Plaintiffs and yet each of them attempts to substantially broaden this case from a small landlord-tenant dispute into a critical survey of Defendants' leasing and hiring practices at Fort Bragg. Consequently, granting Plaintiffs' motion will prejudice Defendants and cause further undue delay in the progress of litigation. Plaintiffs' motion for leave to amend should therefore be denied.

While Plaintiffs argue that leave should be granted because the matter is still in its "early stages," this case has been pending for over seven months. The only reason the matter is still in its early stages is because Plaintiffs continue to file amended pleadings before the Court has the

opportunity to rule on the motions. Plaintiffs should not be permitted to benefit from their own delay. Leave to amend should be denied.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 15(a)(2), a party seeking to amend its pleading may only do so with the opposing party's written consent or by leave of court. Although the rule provides that leave should be freely given when justice so requires, the grant or denial of an opportunity to amend is within the discretion of the district court. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). The Fourth Circuit has previously held that denial of a motion for leave to amend is appropriate "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation omitted). Similarly, the Supreme Court has held that the reviewing court should consider whether there has been any undue delay, a bad faith or dilatory motive, repeated failure to cure deficiencies by previously-allowed amendments, undue prejudice to the opposing party, or futility of the amendment. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

## III.   ARGUMENT

Plaintiffs' motion for leave to amend should be denied. First, Plaintiffs' newly-asserted claims are futile. For instance, Plaintiffs' claims for violations of the UDTPA based on activities Defendants allegedly conducted prior to Plaintiffs' signing their lease with Defendants are clearly time-barred. Plaintiffs' other newly-pled claims contain other fatal deficiencies rendering amendment futile. Moreover, Plaintiffs have not made efforts to amend even a single line in their previously-asserted claims, which were deficient for reasons already briefed by Defendants in their motion to dismiss. Second, Plaintiffs' motion for leave to amend should be denied because Plaintiffs' repeated efforts to amend the Complaint have resulted in prejudice and has caused substantial and undue delay in the proceedings.

4

**A.** **Plaintiffs' Newly-Asserted Claims Are Facially Deficient, and Plaintiffs Failed to Correct Pleading Deficiencies in the Previously-Asserted Counts.**

Although leave to amend should be granted liberally, "a district court may deny leave if amending the complaint would be futile." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citations omitted). Accordingly, denying leave to amend is appropriate where the proposed amended complaint does not properly state a claim under Rule 12(b)(6) and lacks sufficient particularity under Rule 9(b). *Id.* Plaintiffs' motion for leave to amend should be denied as each of the claims contained in the proposed SAC is facially deficient and subject to immediate dismissal.

Defendants have filed two Rule 12(b)(6) motions to dismiss with corresponding briefs outlining the ongoing deficiencies with Plaintiffs' Complaint and FAC. Dkt. 8, 9, 28, 29. Instead of correcting these deficiencies, the SAC adds new claims which do not correct the deficiencies and which are similarly deficient. Accordingly, Plaintiffs' motion should be denied.

**i.** ***Plaintiffs' SAC Continues to Contain Mere Generalized Grievances And Thus Fails to State a Claim Against Any Defendant.***

It is well-settled that "generalized grievances" and "vague allegations" do not properly state a claim. *Alexander v. City of Greensboro*, No. 1:09-CV-934, 2011 WL 13857, at *11 (M.D.N.C. Jan. 4, 2011). A complaint must identify the specific conduct undertaken by a specific defendant that gives rise to a cause of action. *Id.*; *see also Snipes v. Alamance Cty. Clerk of Courts*, No. 1:11CV1137, 2013 WL 4833021, at *4 (M.D.N.C. Sept. 10, 2013) (dismissing complaint that offered conclusory allegations and failed to specify which actions each defendant undertook); *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 896 (W.D.N.C. 2001) (dismissing complaint where plaintiff lumped all defendants into the same factual allegation that "the Defendants were privy to . . . the information concerning the company and its business, operations and business

prospects," and failed to plead what each defendant knew and when in the form of factual allegations).

At best, a complaint that lumps all defendants together and relies on a "group-pleading approach" runs afoul of *Twombly* and *Iqbal* because it "amounts to a conclusory allegation that [all Defendants] were somehow responsible for the wrongful conduct of [the other Defendants]." *Markel Am. Ins. Co. v. XDS, LLC*, 7:20-CV-00075-M, 2020 WL 4938435, at *4 (E.D.N.C. Aug. 24, 2020). "At worst, the repeated refrain that all [Defendants] committed each and every act must be read as an allegation that one of [the Defendants] did each act, an assertion that amounts to speculation and which is deficient under *Twombly*." *Id.*

Here, Plaintiffs improperly and misleadingly refer to Defendants, collectively, as the "landlord/owner" of the properties at issue and then use this conclusory definition to prop up all of their claims against all of the Defendants. *See, e.g.*, SAC ¶ 1 ("Plaintiffs were tenants of real property owned and/or maintained by the Defendants…"); SAC ¶ 46 ("Defendants are the landlord/owners…"). Thus, the SAC requires levels of speculation, illogical leaps, and fill-in-the-blank guessing that are improper under *Twombly* and *Iqbal.*

For example, Plaintiffs declare that "Defendants are the landlord/owners who at all material times were responsible for managing, maintaining and repairing the home," SAC ¶ 46, but this is inaccurate. The ROA defines Bragg as the only "Owner" with whom Plaintiff Lohrenz entered into a contract. Dkt. 18-1 at 1, ¶ 1. Although the Court must accept as true certain allegations of fact in the complaint, it need not accept factual claims that are belied by the documents attached to the complaint itself. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). Corvias Management and Corvias Military are plainly not landlords or owners

under the subject lease agreement and the Court should not credit any of Plaintiffs' allegations to the contrary.

This is not just a technical argument. Under the standards set forth in *Twombly* and *Iqbal*, Plaintiffs' failure to factually and specifically connect their claims to each individual Defendant is fatal. *See Foster v. Dep't of Health & Human Servs.*, No. 1:98CV00902, 2000 WL 33128817, at *1 (M.D.N.C. Dec. 22, 2000) (plaintiff must allege facts that provide each defendant sufficient notice of the harms it allegedly caused); *Snipes*, 2013 WL 4833021 at *4 (dismissing complaint for failing to specify which defendant allegedly took what actions).

Most critically, Defendants have already identified this deficiency on two separate occasions to Plaintiffs – in briefing two rounds of motions to dismiss. *See* Dkt. 8, 9, 28, 29. Yet Plaintiffs have continuously failed to address these fundamental flaws and have carried them forward in their new claims. For instance, in Plaintiffs' new claims, Plaintiffs do not distinguish between any Defendant except in their Sixth Claim for Relief. SAC ¶¶ 98-103. Consequently, this results in numerous assertions that are contradicted by Plaintiffs' prior submission to the Court. By way of example, Plaintiffs' breach of contract claim against "all Defendants" is premised on the erroneous assertion that "Plaintiffs entered into valid contracts with Defendants in the form of a residential lease attached hereto as Exhibit A." SAC ¶ 113. As evidenced by the exhibits attached to the pleadings, the contract at issue was between Bragg Communities, LLC and Michael S. Lohrenz. Dkt. 18-1 at 1, ¶ 1.

Because Plaintiffs' SAC contains generalized grievances that do not state a claim against any Defendant, leave to amend should be denied.

## ii.    *Plaintiffs' New Claim for a Violation of the UDTPA (Count IV) Fails and is Time-Barred.*

To establish a violation of the North Carolina Unfair and Deceptive Trade Practices Acts ("UDTPA"), "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N. Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). The UDTPA defines "commerce" to include all business activities. N.C. Gen. Stat. § 75–1.1(b). North Carolina courts have stressed that "the Act is not intended to apply to all wrongs in a business setting." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991).

When evaluating a claimed violation of the UDTPA, "[t]he courts differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quotations omitted). Furthermore, "mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA,]." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). Similarly, a breach of warranty alone, even if intentional, is not a violation of the UDTPA. *See Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001).

Here, many of Plaintiffs' allegations of breach of the UDTPA are simply re-packaged breach of contract or breach of warranty claims without any aggravating factors. For instance, Plaintiffs allege that Defendants engaged in unfair and deceptive trade practices by "offering, marketing, and leasing residential housing to Plaintiffs that had defects and deficiencies," by "receiving payment in the form of the BAH [Basic Allowance for Housing] … where the BAH was calculated based on an assumption that it was paying for reasonable and safe housing, when

in fact, that was not the case," or by "breaching the implied warranty of habitability." SAC ¶ 76. These allegations, at their heart, are merely re-packaged allegations for breach of contract or breach of habitability. Therefore, leave to amend should not be granted. *See e.g. Southeastern Shelter Corp. v. BTU, Inc.,* 154 N.C.App. 321, 330, 572 S.E.2d 200, 206 (2002) (holding that it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.").

Furthermore, to the extent Plaintiffs' allegations in support of its UDTPA claim are based on the Defendants' allegedly deceptive and misleading tactics, Plaintiffs must demonstrate *actual reliance* on the purportedly deceptive or misleading statements to establish the proximate cause of a UDTPA claim, and Plaintiffs must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Bumpers v. Cmty. Bank of N. Va.,* 367 N.C. 81, 88–90, 747 S.E.2d 220, 226–27 (2013); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020), appeal dismissed, No. 20-1262, 2020 WL 5203205 (4th Cir. Aug. 31, 2020). Accordingly, to satisfy their obligations under Fed. R. Civ. P. 9(b), the "circumstances' required to be pled with particularity . . . are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal citation omitted). Plaintiffs have failed to plead sufficient facts to establish actual reliance on the purportedly deceptive or misleading tactics or to satisfy the requirements of Rule 9(b). In addition to improperly lumping all Defendants into a single group, Plaintiffs have made no effort to plead with particularity the time, place, and contents of the statements at issue. By way of example, Plaintiffs allege that all Defendants violated the UDTPA "[b]y unfairly and deceptively marketing lease offerings as coming with excellent

customer service, repair, and maintenance, when in fact, that was not the case." SAC ¶ 76. Defendants have no way of identifying when such allegedly deceptive statements were made, who made them, or how the representations were false. For the foregoing reasons, Plaintiffs' proposed addition of a UDTPA claim is futile and Plaintiffs' request for leave to amend should be denied.

Moreover, Plaintiffs' request for leave to amend should be denied because Plaintiffs' newly-raised claims for violations of the UDTPA are time-barred. The claims are based, in part, on allegedly unfair and deceptive trade practices related to Defendants' offering, marketing, and leasing of rental housing to Plaintiffs. SAC ¶¶ 75-76, 80. Plaintiffs contend that Defendants engaged in allegedly unfair and deceptive trade practices "[b]y offering, marketing, and leasing residential housing to Plaintiffs," "[b]y unfairly and deceptively marketing lease offerings as coming with excellent customer service, repair, and maintenance," and by "knowingly leas[ing] the duplex to Plaintiffs, marketing and representing the rental homes as being safe, habitable, and well-serviced by Defendants." SAC ¶¶ 76, 80. Plaintiffs allege that they leased their home from Defendants on March 30, 2018, SAC ¶ 11, and that "[s]hortly after taking possession of [the unit], the Plaintiffs' began to experience issues affecting the habitability of the real property." SAC ¶ 14. The UDTPA has a four-year statute of limitations. N.C. Gen. Stat. 75-16.2. Certainly, activities related to offering, marketing, and leasing residential housing to Plaintiffs took place prior to March 30, 2018. Given that Plaintiffs were aware of these purported issues shortly after taking possession of the unit, both the alleged conduct and the Plaintiffs' awareness thereof put these newly-raised claims outside the statute of limitations for the UDTPA.

In any event, the new allegations do not "relate back" to the date of the original pleading. An amendment to a pleading "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15. Plaintiffs' original pleading stated that "[t]his is an Action for personal injury and personal property damage caused by water intrusion and elevated indoor relative humidity which has caused subsequent proliferation of microbes and microbial chemistries in Plaintiffs' residence…." FAC ¶ 49. Plaintiffs' original complaint contained no allegations regarding the offering, marketing, or leasing of rental housing to Plaintiffs or others, and therefore the new allegations do not relate back.

The Fourth Circuit has held that leave to amend should be denied where the proposed amendment is made beyond the statute of limitations and the new allegations would not relate back to the original complaint. *See United States v. Pittman*, 209 F.3d 314 (4th Cir. 2000). Accordingly, Plaintiffs' request for leave to amend should be denied to the extent Plaintiffs' new claims rely on offering, marketing, and leasing activities that took place more than four years before the date of the SAC.

### iii.  *Plaintiffs' New Claim for Violation of the NC RRAA (Count V) Fails.*

Under the RRAA, Plaintiffs must adequately allege nonfulfillment of the defendant's obligations under the act in order to entitle them to relief. *See Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 355 S.E.2d 189 (1987)*.* Accordingly, Plaintiffs must plead the specific conditions of the premises that were unfit for habitation in order to state a claim. *See Doe v. Lenoir-Rhyne Univ.,* No. 5:18-CV-00032-DSC, 2018 WL 4101520, at *3 (W.D.N.C. Aug. 28, 2018) (granting defendant's motion to dismiss where Plaintiff failed to show that any of the conditions of the premises were unfit for habitation). Here Plaintiffs have failed to identify which conditions of the premises were unfit for habitation. Instead, Plaintiffs allege vaguely that "Defendants violated N.C. Gen. Stat. § 42-42 and the implied warranty of habitability," but Plaintiffs never

explain what specific condition of the premises was unfit for habitation. Therefore, Plaintiffs have not stated a claim under the RRAA.

Even assuming *arguendo* that Plaintiffs have adequately pled a violation of the RRAA, they can only state a claim against, at most, two of the Defendants. The RRAA defines a landlord as "any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by [the RRAA]." N.C. Gen. Stat. § 42-40(3). Plaintiffs' ROA is between Michael Lohrenz and Bragg Communities, and the ROA provides that "[t]he Home and all matters relating to this Agreement will be managed by Corvias Management - Army, LLC (the "Community Manager")." *See* Dkt. 18-1 at 1, ¶ 1. Thus, Bragg Communities and Corvias Management are the only Defendants who could properly be considered a "landlord" within the meaning of the statute. There are no facts plausibly alleging that any other Defendant performed repair functions on Plaintiffs' home or that Corvias Military is a "landlord" as defined by the RRAA. Accordingly, the claim for alleged violation of the RRAA as to Corvias Military is futile and leave to amend should not be granted.

### iv. *Plaintiffs' New Claim for Private Nuisance (Count VI) Fails.*

To make out a prima face case for private nuisance, a plaintiff must show an unreasonable interference with the use and enjoyment of plaintiff's property. *Kent v. Humphries*, 303 N.C. 675, 677, 281 S.E.2d 43, 45 (1981). As part of evaluating a private nuisance claim, the "essential inquiry . . . is whether the defendant's conduct is unreasonable." *Twitty v. State*, 85 N.C. App. 42, 50, 354 S.E.2d 296, 302 (1987) (citing *Pendergrast v. Aiken*, 293 N.C. 201, 236 S.E.2d 787 (1977)).

From the outset, Plaintiffs' claim fails based solely on the allegations contained within the claim itself. Here, the allegations of the SAC only refer to Corvias Military Living and none of the other Defendants. Plaintiff alleges that "Defendant Corvias Military Living had an ownership

interest in the homes rented to the Plaintiffs." SAC ¶ 100. But this contention is belied by the documents attached to Plaintiffs' FAC, which clearly state that Bragg Communities is the owner of the home – *not* Corvias Military Living. *See* Dkt. 18-1 at 1, ¶ 1. For this reason alone, amendment is futile.

Also, Plaintiffs have made no effort to plead any factual allegations in support of their claim. *See* SAC ¶ 98-103. By way of example, Plaintiffs broadly allege that "Corvias Military Living misused its ownership interest in the relevant property to cause an unreasonable and substantial intrusion upon the Plaintiffs' ability to use and enjoy their occupancy interest in the home." SAC ¶ 101. However, Plaintiffs never indicate what the "unreasonable and substantial intrusion" involved, who perpetuated it, or how it impacted their ability to use and enjoy their home. Consequently, Plaintiffs have unequivocally failed to give Defendants fair notice required under *Twombly* and *Iqbal* and have failed to state a claim upon which relief may be granted. Accordingly, the proposed addition of a claim of private nuisance is futile and the motion for leave to amend should be denied.

### v. Plaintiffs' New Claim For Breach of Implied Covenant of Good Faith and Fair Dealing (Count VII) Fails.

The North Carolina Supreme Court has recognized that "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted). As a general matter "where a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, [the North Carolina courts] treat the former claim as part and parcel of the latter." *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 817 S.E.2d 247 (2018) (internal quotations omitted).

From the outset, there is no contract between the plaintiffs and Corvias Management or Corvias Military. *See* Dkt. 18-1 at 1, ¶ 1. Accordingly, there is no contract upon which Plaintiffs may base their claimed breach of the implied covenant of good faith and fair dealing as against Corvias Management or Corvias Military.

Plaintiffs' remaining allegations in support of their claim of breach of the implied covenant of good faith and fair dealing fail, as they are not rationally related to Bragg Communities' obligations under the covenant of good faith and fair dealing. Plaintiffs include a laundry list of items that appear related to Plaintiffs' understanding of Defendants performance obligations. By way of example, Plaintiffs allege that they understood that Defendants would "[e]nsure professional management and maintenance of housing neighborhoods consistent with the standard of a market-rate residential rental development in Canton, North Carolina." SAC ¶ 108(E). Putting aside that Canton, North Carolina is located on the other side of the state from Fort Bragg, it is unclear what serves as the basis for Plaintiffs' "understanding" or "expectations" or how that factors into any alleged bad faith on the part of Defendants.

Regardless, the Plaintiffs' claims are unsupported by the factual allegations of the proposed SAC. Although the Plaintiffs provide a list of activities which Plaintiffs allege were "reasonably understood and expected" that Defendant would do in accordance with their performance of the lease, SAC ¶ 108, the Plaintiffs never indicate which, if any, of these activities were not performed. Plaintiffs' proposed addition of this claim is clearly futile and the motion for leave to amend should be denied.

### vi.    *Plaintiffs' New Claim For Breach of Contract (Count VIII) Fails.*

North Carolina follows the basic common law rules of breach of contract. Accordingly, "to prevail on a claim for breach of contract, a party must show: (1) existence of a valid contract; and

(2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C.App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted).

Plaintiffs cannot state a claim against all Defendants for breach of contract because Plaintiff did not have a contract with Corvias Management or Corvias Military Living. The ROA defines Bragg Communities as the only "Owner" with whom Plaintiff Lohrenz entered into a contract. *See* Dkt. 18-1 at 1, ¶ 1. The Court need not accept as true factual claims that are internally inconsistent or belied by the documents attached to the complaint. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Here, Corvias Management and Corvias Military Living are clearly not landlords or owners and Plaintiffs' allegations to the contrary are contradicted by the exhibits to the Complaint.

Despite attaching the relevant ROA, Plaintiffs continue to group all the Defendants together without any allegations suggesting the existence of a contract between Plaintiffs and either Corvias Management or Corvias Military. Accordingly, the breach of contract claims against Corvias Management and Corvias Military are contradicted by the Plaintiffs' evidence and are fatally deficient. Significantly, rather than pointing to specific contract terms that were breached, Plaintiffs make vague references to the "explicit and implicit duties" of Defendants "to perform the contract so as to ensure the leased homes were fit for human habitation." SAC ¶ 114. Accordingly, Plaintiffs have failed to satisfy the minimum pleading requirements necessary to put Defendants on notice of the claims against them, and Plaintiffs' breach of contract claim is therefore futile and the motion to amend should be denied.

### vii. *Plaintiffs Have Failed to Correct their Futile Claims For Negligence (Count I), Gross Negligence (Count II), and Battery (Count III).*

For the reasons previously set forth in depth in Defendants' Motions to Dismiss and accompanying memoranda of law (Dkt.. 8, 9, 28, 29), Plaintiffs cannot state a claim for negligence,

gross negligence, or battery.[1] In the SAC, Plaintiffs do not attempt to correct a single deficiency identified by Defendants. They simply re-assert the same problematic allegations. Thus, for the reasons previously described by Defendants, all three claims fail.

First, Plaintiffs' claim for negligence fails because North Carolina law is clear that a landlord has no common law duty to maintain premises occupied by a tenant.[2] As explained in *Lenz v. Ridgewood Assocs.*, 55 N.C. App. 115, 117, 284 S.E.2d 702, 704 (1981), North Carolina's "appellate courts have consistently held that the failure of the landlord to maintain the demised premises in a safe condition does not ordinarily give rise to an action by the tenant for personal injury arising out of a defective condition of the demised premises." *See, e.g., Robinson v. Thomas*, 244 N.C. 732, 94 S.E.2d 911 (1956) (porch floor gave way); *Leavitt v. Rental Co.*, 222 N.C. 81, 21 S.E.2d 890 (1942) (ceiling plaster fell); *Jordan v. Miller*, 179 N.C. 73, 101 S.E. 550 (1919) (hole in stairway). Because no duty of maintenance arises, Plaintiffs' negligence claim fails as a matter of law.

Second, Plaintiffs' claim for gross negligence fails because Plaintiffs fail to provide any additional facts in their SAC to distinguish their gross negligence claim from their ordinary negligence claim. While Plaintiffs have asserted that Defendants failed to repair defects they "knew or should have known" about, Plaintiffs' allegations still fail to suggest that Defendants' actions manifested any wicked purpose, or conscious and intentional disregard of the rights and safety of others. *See Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC*, 764 S.E.2d 203, 212 (N.C. Ct. App. 2014) (finding condominium homeowners association could not maintain a gross negligence claim against condominium developer by simply asserting that the contractor

---

[1] Defendants incorporate the arguments previously raised in Dkts. 8, 9, 28, 29 herein.
[2] While landlords do have obligations with regard to common property, there are no allegations regarding maintenance of common property in the proposed SAC.

and developer acted in a grossly negligent fashion without identifying any specific act or omission on the part of the contractor and developer that was grossly negligent). Moreover, to the extent that Plaintiffs argue that a violation of the RRAA constitutes gross negligence, there is no precedent in North Carolina for such a proposition. In fact, the RRAA expressly provides that "[a] violation of this Article shall not be considered negligence per se." N.C. Gen. Stat. Ann. §§ 42-38 to 42-44.

Third, Plaintiffs have failed to state a claim for battery. Plaintiffs' claim for battery does not distinguish between each of the Defendants and does not allege with specificity how any particular Defendant allegedly committed a battery on any particular Plaintiff. Instead, all of the Defendants are improperly lumped together. *See* SAC ¶ 65. Additionally, Plaintiffs have failed to plead the element of intent because Plaintiffs do not provide any allegations about an affirmative act undertaken by Defendants and directed to Plaintiffs. Despite their multiple attempts at amendment, Plaintiffs continue to provide only threadbare allegations that Defendants somehow "knew" Plaintiffs would be exposed to molds and mold chemistries when they moved into their rental homes and that "Defendants intentionally caused bodily contact with each Plaintiff to the molds and mold chemistries within the rental homes." SAC ¶ 65. This is insufficient to state a claim because Plaintiffs do not allege that Defendants took any affirmative act toward exposing Plaintiffs to "molds and mold chemistries" or that Defendants somehow engineered a release of mold that would impact Plaintiffs. To the contrary, the "Mold Addendum" to the ROA, appended to the pleadings, makes it clear that the landlord expressly warned Plaintiff of the potential for mold growth due to the general environmental presence of molds and the necessary precautions for its prevention and remediation. *See* Dkt. 18-1 at 7. Likewise, the lease document shows that Plaintiff Lohrenz expressly confirmed the habitable and satisfactory condition of the home upon

his own inspection when he took possession of the premises. *See* Dkt. 18-1 at ¶ 10. Plaintiffs also fail to properly allege a harm sufficient to constitute a battery in North Carolina. Broadly alleging that Defendants were aware that there was mold in certain rental homes and/or that the mold somehow made its way into Plaintiffs' bodies without any mention of a specific harm it caused Plaintiffs does not satisfy the pleading standard for battery under North Carolina law. Passive exposure to a hazard is insufficient to sustain a battery claim. *See, e.g., Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 95 (4th Cir. 2011) (no battery where plaintiff alleged presence of PFOA in their blood as a result of defendant's release of the chemical into the environment, but plaintiff had not actually suffered any physical harm based on the exposure); *see also Callaway v. Nu-Cor Auto. Corp.*, 849 N.E.2d 62, 166 Ohio App.3d 56, (Ohio Ct. App. 2006) (no battery where plaintiff alleged employer instructed plaintiff to pour molten aluminum into inadequately heated casting mold where doing so was substantially certain to cause injury). Due to these numerous unabated pleading deficiencies, Plaintiffs' proposed SAC still fails to plausibly allege a claim for battery, so the motion for leave to amend should be denied.

**B.      Granting Plaintiffs' Motion Will Cause Further Undue Delay and Prejudice Defendants.**

A motion for leave to amend may be appropriately denied when the amendment would be prejudicial to the opposing party. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has previously held that "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule." *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987) (quoting 6 Wright & Miller, Federal Practice and Procedure § 1488 (1971)). Consequently, the Fourth Circuit has routinely upheld denial of a motion to amend "when it has been unduly delayed and when allowing

18

the motion would prejudice the non-movant." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 941 (4th Cir. 1995).

Here, the Court should deny Plaintiffs' belated attempt to amend the complaint because such efforts have been unduly delayed and because allowing the amendment would prejudice Defendants. To date, the parties are already several months behind their anticipated schedule – almost exclusively as a result of Plaintiffs' ongoing efforts to amend their pleadings. Moreover, Defendants have already had to incur the substantial expense of preparing and filing two motions to dismiss, which Plaintiffs now seek to render moot. Plaintiffs' submission of the FAC rendered Defendants' first motion to dismiss moot, and Plaintiffs now seek to render Defendants' second motion to dismiss moot over a month after the second motion was fully briefed and submitted to the Court.

Despite arguing that "the additional claims included in the proposed amendment are routinely pled and included as theories for relief in landlord/tenant and personal injury matters similar to Plaintiffs,'" Dkt. 46 p. 2, Plaintiffs have not offered a justification for their delays. Consequently, it remains unclear why Plaintiffs have waited until the final day under the Scheduling Order, over seven months after their initial filing, to amend their pleadings for the second time to add "routine" allegations.[3]

Also, granting Plaintiffs' motion for leave will inevitably lead to additional delays in the Scheduling Order that will likely require subsequent amendments to the Scheduling Order. Plaintiffs' newly added claims have significantly broadened the scope of the dispute between the

---

[3] To the extent Plaintiffs seek to amend in order to mirror claims asserted in other pending lawsuits involving Fort Bragg, Plaintiffs have had knowledge of those claims since June 2020, over 1.5 years before their initial complaint was filed. Plaintiffs clearly knew about such claims well before the time Plaintiffs filed their FAC, in March 2022 (Dkt. 18). Accordingly, Plaintiffs can show no justification for waiting to amend until July 2022.

parties and will require additional fact gathering. Plaintiffs' FAC asserted claims for negligence, gross negligence, and battery arising out of Plaintiffs' contentions regarding "personal injury and personal property damage caused by water intrusion and elevated indoor relative humidity." FAC ¶ 49. Plaintiffs' purported SAC now attempts to assert brand new theories on new factual allegations, claiming that Defendants have allegedly offered, marketed, and leased housing to Plaintiffs that had defects, that Defendants have conducted resident satisfaction surveys that were inaccurate, and that Defendants have maintained customer service and repair and maintenance records that were incomplete and unreliable, among other new allegations. SAC ¶ 76.

Although the parties are not on the cusp of trial, Defendants will nonetheless be prejudiced by these new allegations and claims that attempt to greatly expand the scope of the dispute between the parties after more than seven months of unexplained delay and two rounds of Motions to Dismiss. Accordingly, the Court should deny Plaintiffs' request for leave to amend.

## IV. CONCLUSION

For the reasons set forth herein, this Court should deny Plaintiffs' motion for leave to amend the First Amended Complaint.

Date:   July 15, 2022                    Respectfully submitted,

                                         */s/ Mark P. Henriques*
                                         Mark P. Henriques (N.C. Bar No. 18701)
                                         Matthew F. Tilley (N.C. Bar No. 40125)
                                         WOMBLE BOND DICKINSON (US) LLP
                                         3500 One Wells Fargo Center
                                         301 South College Street
                                         Charlotte, North Carolina 28202-6025
                                         Telephone:     (704) 331-4912
                                         Fax:           (704) 338-7830
                                         E-mail: Mark.Henriques@wbd-us.com
                                         E-mail: Matthew.Tilley @wbd-us.com

                                         **HOLLAND & KNIGHT LLP**

                                         Thomas J. Yoo*
                                         400 S. Hope St., 8th Floor
                                         Los Angeles, CA 90071
                                         Telephone: (213) 896-2400
                                         Facsimile:  (213) 896-2450
                                         Thomas.Yoo@hklaw.com

                                         Jessica L. Farmer*
                                         800 17th Street, N.W., Suite 1100
                                         Washington, D.C. 20006
                                         Telephone: (202) 469-5222
                                         Facsimile:  (202) 955-5564
                                         Jessica.Farmer@hklaw.com

                                         Daniel K. Winters*
                                         31 West 52nd Street
                                         New York, New York 10019
                                         Telephone:  (212) 513-3200
                                         Facsimile:  (212) 385-9010
                                         Daniel.Winters@hklaw.com

                                         Laura Renstrom*
                                         50 N. Laura Street, Suite 3900
                                         Jacksonville, FL 32202
                                         Telephone: (904) 798-7222
                                         Facsimile: (904) 358-1872
                                         laura.renstrom@hklaw.com

*\* specially admitted*                    *Attorneys for Defendants*

## LOCAL RULE 7.2(f)(2) CERTIFICATION

The undersigned hereby certifies that this memorandum of law consists of 20 pages and is therefore compliant with Local Rule 7.2(f)(2) and contains 6,296 words.

/s/ *Mark Henriques*
Mark Henriques

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July 2022, Defendants' Memorandum in Opposition to Plaintiffs' Motion for Leave to Amend the First Amended Complaint was served on all parties of record via the Court's ECF filing system.

/s/ *Mark Henriques*
Mark Henriques