IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00044-M

| | |
|---|---|
| **Amy Lohrenz,** et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**Bragg Communities, LLC,** et al.,<br><br>    Defendants. | **Order &<br>Memorandum & Recommendation** |

Amy Lohrenz and her family have sued Bragg Communities, LLC, Corvias Management-Army, LLC, and Corvias Military Living, LLC, under North Carolina law for Defendants' alleged failure to provide the family with habitable housing. Am. Compl., D.E. 18. Presently before the court are two motions: Defendants' motion to dismiss for failure to state a claim (D.E. 28) and the Lohrenz family's motion for leave to file a second amended complaint (D.E. 42). For the reasons below, the undersigned grants the motion to amend in part and recommends that the district court do the same with the motion to dismiss.[1]

## I. Background[2]

Toward the end of March 2018, Army Major Michael Lohrenz, his wife Amy, and their four children rented a home on Fort Bragg at 32 Bloom Road. Am. Compl. ¶ 15. According to

---

[1] United States Magistrate Judges have authority "to hear and determine any pretrial matter" referred by a United States District Judge subject to certain statutory and constitutional exceptions. *See* 28 U.S.C. § 636(b)(1)(A). When not authorized "to hear and determine" a particular matter, a magistrate judge may, upon referral from a district judge, "submit. . .proposed findings of fact and recommendations for the disposition" of that matter. *Id.* § 636(b)(1)(B). Motions seeking to dismiss an action for failure to state a claim are among those a magistrate judge must address through a recommendation. *Id.* § 636(b)(1)(A). But motions seeking to amend a pleading are among those non-dispositive matters that a magistrate judge can directly decide. *Queen v. Dietrich*, No. 1:21-cv-00323, 2023 WL 2653193 (M.D.N.C. Mar. 27, 2023) (describing a motion to amend as a "non-dispositive pretrial matter"); *Bro. T. Hesed-El v. John Doe*, No. 1:19-cv00285-MR-WCM, 2021 WL 1178058, at *3 (W.D.N.C. Mar. 29, 2021); *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778 (E.D.N.C. 2011).

[2] The factual background presented below is taken from the allegations in Plaintiffs' first amended complaint.

the Resident Occupancy Agreement ("lease") that Major Lohrenz signed, Bragg Communities owned the property. *See* Lease at 6, D.E. 18–1. The lease also lists Corvias Management-Army as the Community Manager, placing it in charge of making repairs and fulfilling service requests. *Id.* at 1, 4. And the Lohrenzes contend that the final Defendant,[3] Corvias Military Living, is "involved in the development, construction, and property management of the privatized military housing project."[4] Am. Compl. ¶ 8.

Shortly after moving in, the family discovered problems with 32 Bloom Road. Am. Compl. ¶ 18. They learned that the home—and, by extension, its tenants—suffered from mold, water leaks, floods, insect infestations, and poor air quality. *Id.* ¶ 19. Even worse, the Lohrenzes contend that Defendants failed to inspect the property prior to executing the lease and refused to remediate the hazards before allowing the Lohrenzes to move in. *Id.* ¶ 20.

The Lohrenzes asked Defendants to remedy the dangerous conditions, but the problems remained. *Id.* ¶ 19. At one point while the family lived at 32 Bloom Road, they learned that Defendants had used Kilz paint—which (the family claims) is known for its ability to mask the smells of mold and mildew—to paint over moldy wood. *Id.* ¶ 21. The amended complaint contains several pictures documenting mold growth and water damage in the house.

In March 2019, Defendants conducted an environmental assessment and mold survey at the Lohrenzes' home. *Id.* ¶ 22. The assessment report revealed mold concentration above normal background levels and an abnormal amount of moisture in the floor. *See* Mold Survey, D.E. 18–2. Both these issues required "immediate correction." *Id.* at 2.

---

[3] Plaintiffs also originally sued Heather Fuller, an employee of one of the Corvias companies. Mem. Supp. Second Mot. Dismiss at 7–9. But they voluntarily dismissed her from the suit in April 2022. Notice of Voluntary Dismissal, D.E. 37.

[4] Corvias Military's precise role in property management is hard to pin down. The Lohrenzes' lease suggests that Corvias Military managed certain amenities in the community, including the fitness center and pool. *See* Lease at 11–12. But the amended complaint suggests that its role is broader—Corvias Military allegedly maintained construction offices at Fort Bragg and has, in prior lawsuits, held itself out as the owner of Bragg Communities. *See* Am. Compl. ¶ 8.

2

In March 2019, Defendants temporarily relocated the Lohrenzes to 12 Bloom Road, claiming that remediation on their prior home would be complete in two weeks. Am. Compl. ¶¶ 23–24. Yet the remediation took over 16 weeks, more than 8 times longer than anticipated. *Id.* ¶ 25. The Lohrenzes left most of their personal property at 32 Bloom Road during the remediation. *Id.* ¶ 25. But the family's new home had its own issues—termites, mold, and water damage. *Id.* ¶ 26. After the Lohrenzes complained, Defendants eventually treated the termite infestation, but they failed to remediate the mold or leaks. *Id.* ¶¶ 28. In fact, the Lohrenzes found evidence suggesting Defendants concealed and only partially repaired water damage before they moved in. *Id.* ¶ 33.

A month later, Corvias Military tested 32 Bloom Road for mold. *Id.* ¶ 30. The resulting examination report concluded that the home contained "very heavy" black mold growth and lighter concentrations of other types of mold. *See* Tape Test Report, D.E. 18–3. Further testing indicated that several other disease-causing mycotoxins had taken up residence alongside the Lohrenzes. Am. Compl. ¶ 31. One report concluded that the "[t]ypes and concentrations of mold detected are consistent with water-damaged building materials." Matrix Assessment Report at 2, D.E. 18–4.

The Lohrenzes didn't know about the test results until two months later. Am. Compl. ¶ 35. When Defendants eventually passed the news along, they notified the Lohrenzes that all their property—whether stored at 12 Bloom Road or 32 Bloom Road—needed to be destroyed or remediated. *Id.* ¶ 34. During those two months, the Lohrenzes regularly exposed themselves to contaminants by travelling between the two homes and using the mold-infested property stored at 32 Bloom Road. *Id.* ¶ 35.

Defendants then told the Lohrenzes they would need to move again. *Id.* ¶ 36. But rather than risk living in a third dangerous home, the family decided to move to Montana and leave their contaminated personal possessions behind. *Id.* ¶ 37. Defendants eventually sent the Lohrenzes the estimated remediation costs for their possessions at 32 Bloom Road, but they never followed through on having the items disinfected. *Id.* ¶ 40. The Lohrenzes paid to remove all their belongings from the two houses and place them into storage, but nearly all the property had to be destroyed. *Id.* ¶¶ 41, 43.

The Lohrenzes claim that their injuries are not limited to lost property. Exposure to the mold, fungus, and excreted chemistries at the two homes also caused them medical issues, including "fatigue, weakened immune systems, congestion, infection, vomiting, weight loss, hearing loss, blurred vision, and skin disease." *Id.* ¶ 45. Each family member had to visit the doctor multiple times. *Id.* And Major Lohrenz had to return from deployment or pre-deployment training several times to care for his ailing family members, causing him to receive unfavorable employment evaluations. *Id.* ¶ 46. These evaluations precluded him from receiving a promotion and cost him wages. *Id.*

All told, the Lohrenzes allege that Defendants knew about the defects in both homes and failed to notify the family that they were unfit for habitation. The mycotoxins in each house infiltrated the family's possessions and their bodies, ruining their belongings and making them ill.

The Lohrenzes originally sued in North Carolina state court in December 2021. Defendants removed the case to federal court a month later. *See* Notice of Removal, D.E. 1. Defendants then moved to dismiss the original complaint (D.E. 8), but the Lohrenzes filed an amended complaint in March 2022, rendering Defendants' motion moot. *See* Order Denying

4

First Mot. Dismiss as Moot, D.E. 48. The amended complaint asserts claims against all Defendants for negligence, gross negligence, and battery. Am. Compl. ¶¶ 56–72. The Lohrenz family seeks compensatory and punitive damages.

Later that month, Defendants once again moved to dismiss. Second Mot. Dismiss, D.E. 28. They first contend that the Lohrenzes impermissibly lumped all Defendants together in their factual allegations, leaving each Defendant unsure of the specific claims against it. Mem. Supp. Second Mot. Dismiss at 5–7, D.E. 29. And second, they maintain that the Lohrenzes have failed to state a claim for negligence, gross negligence, or battery. *Id.* at 10–21.

In June 2022, the Lohrenzes asked to file a second amended complaint. Mot. File Second Am. Compl., D.E. 42. The proposed second amended complaint does not overhaul the family's factual allegations, but it adds five claims for relief. On top of the three claims in their first amended complaint, the Lohrenzes allege:

- All Defendants violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA");

- All Defendants violated the North Carolina Residential Rental Agreements Act ("RRAA") and breached the warranty of habitability;

- Defendant Corvias Military created a private nuisance;[5]

- All Defendants breached their contract with the Lohrenzes; and

- All Defendants breached the implied covenant of good faith and fair dealing.

Proposed Second Am. Compl. ¶¶ 73–118.

---

[5] As is discussed more fully below, the text of the proposed second amended complaint is confusing. The caption for the Lohrenzes' private nuisance claim suggests that they intend to bring the claim against Bragg Communities. The allegations that follow, however, mention only Corvias Military. *See* Proposed Second Am. Compl. ¶¶ 98–103. The undersigned construes this as a claim against Corvias Military, since it is the defendant mentioned in the allegations themselves.

5

Defendants oppose the Lohrenz family's motion to amend, raising many of the same arguments that they offered in their pending motion to dismiss. Because the factual allegations underlying both the first amended complaint and the proposed second amended complaint are the same, Defendants maintain that the collective allegations fail to notify the Defendants, individually, of the claims against them. Mem. Opp'n Mot. File Second Am. Compl. at 7–9, D.E. 47.[6] They also contend that none of the five new claims states a claim for relief, rendering the proposed amendments futile. Finally, they allege that the family's UDTPA claim is time-barred. *Id.* at 12–13.

## II.    Legal Standard

### A.    Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure governs amended pleadings. The Rule gives a party the right to amend a pleading once if it does so within 21 days of the date of its service. Fed. R. Civ. P. 15(a)(1)(A). If a party misses that deadline and the pleading requires a response, it may amend its pleading within 21 days of the earlier of the filing of a responsive pleading or a motion to dismiss. *Id.* 15(a)(1)(B). Otherwise, a party may only file an amended pleading with consent from the opposing party or leave of court. *Id.* 15(a)(2).

Courts should "freely give leave" to amend a pleading "when justice so requires." *Id.* Despite this generous standard, a court should deny a request to amend a pleading if the amendment "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber* v. *Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). And a proposed amendment is futile if the amended pleading

---

[6] Pinpoint citations refer to the court's CM/ECF page numbers found at the bottom of each document, not the parties' page numbering.

would not survive a motion to dismiss. *Save Our Sound OBX, Inc.* v. *N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (citing *Perkins* v. *United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

## III.    Motion to Dismiss

Under Federal Rule 12, the court may dismiss a complaint if it fails to state a claim. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained that, to withstand a motion to dismiss under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Therefore, while a court must accept all factual allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory or a mere formulaic recitation of the elements of a claim. *Id.* at 679. Then, taking the remaining factual allegations as true, the court must determine whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" *Id.* (citation and internal quotation marks omitted). Thus, if a party fails to show that it is entitled to relief, the court must dismiss its deficient claims.

7

IV. **Resolving Both Motions**

When a plaintiff amends his complaint, it usually voids the original complaint and renders any motion to dismiss it moot. *Fawzy* v. *Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint of no effect.") (citation omitted). But this rule is not absolute. Federal courts have noted that, if a defendant alleges that an amended complaint "suffers from the same defect as the original [c]omplaint," the court may address the motion to dismiss alongside the motion to amend. *See, e.g.*, *Slumber Parties, Inc.* v. *Cooper*, No. RDB-12–00791, 2012 WL 2915110, at *4 (D. Md. July 16, 2012) (citing *Ohio River Valley Environ. Coalition, Inc.* v. *Timmermeyer*, 66 F. App'x 468, 472 n.4 (4th Cir. 2003)); *see also* 6 Wright & Miller, Federal Practice & Procedure § 1476 (3d ed. 2013).

Courts have also determined that—when a motion to dismiss and a motion to amend are both fully briefed and largely share the same standard of review—the court need not "deem the motion to dismiss mooted by the requested amendment." *Hooker* v. *Citadel Salisbury LLC*, No. 1:21-cv-00384, 2022 WL 1663421, at *3 (M.D.N.C. May 25, 2022). Instead, the court may rule on both motions simultaneously. *Id.*

Defendants argue that the Lohrenz family's first amended complaint should be dismissed for failure to state a claim. *See* Mem. Supp. Second Mot. Dismiss at 7. They also contend that the family's motion for leave to file a second amended complaint should be denied as futile. *See* Resp. Opp'n Mot. Amend at 4–5. And since a motion to amend is futile if it fails to state a claim, the court must apply the same standard of review to both the motion to dismiss and the motion to amend. *See Hooker*, 2022 WL 1663421, at *3.

Defendants have already filed one motion to dismiss. That motion became moot when the Lohrenzes first amended their complaint. *See* Order Denying First Mot. Dismiss as Moot. And

8

the Lohrenzes' proposed second amended complaint contains similar factual allegations to their first amended complaint.[7] The parties—through their briefing on the two pending motions—have fleshed out their arguments as to the sufficiency of all eight of the Lohrenzes' claims. Forcing them to undergo another round of briefing on a third motion to dismiss would unnecessarily prolong this litigation, and the filings would likely mirror those already before the court. Thus, the undersigned recommends that the district court decline to find that Defendants' motion to dismiss is moot. The court should address both pending motions in tandem rather than "exalt form over substance." 6 Wright & Miller, Federal Practice & Procedure § 1476.

## V.    Sufficiency of Group Pleading

In both their motion to dismiss and their brief opposing the Lohrenz family's motion to amend, Defendants argue that the family's claims should be dismissed because their factual allegations generally address Defendants as a group. *See* Mem. Supp. Second Mot. Dismiss at 5–7; Mem. Opp'n Mot. File Second Am. Compl. at 5–7.

To comply with the Federal Rules, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts are skeptical of—but do not altogether foreclose—collective allegations. *Compare, e.g.*, *Snipes* v. *Alamance Cnty. Clerk of Courts*, No. 1:11CV1137, 2013 WL 4833021, at *4 (M.D.N.C. Sept. 10, 2013) ("The failure to specify which Defendant allegedly took what action(s) renders [plaintiff's] claims deficient.") (citations omitted), *adopted by* 2013 U.S. Dist. LEXIS 188787 (M.D.N.C. Sept. 30, 2013), *with Walker* v. *Apex Wind Constr. LLC*, No. CIV-14–914-D, 2015 WL 348778, at *3 (W.D. Okla. Jan. 26, 2015) ("As a general

---

[7] Other than adding five novel claims for relief, the proposed second amended complaint only differs from the first amended complaint by removing mention of Heather Fuller, who Plaintiffs voluntarily dismissed from their suit. Although some proposed claims include new factual allegations, the general claims at the core of the lawsuit are the same. *See* Redlined Proposed Second Am. Compl. ¶¶ 9–43, D.E. 45-2.

9

matter . . . collective allegations are not prohibited by [Rule 8(a)]. Rather, the allegations must simply provide [d]efendants with fair notice of the claims against them.").

The Supreme Court has explained that the critical inquiry is whether the plaintiff "give[s] the defendant fair notice" of the claim against it and the legal "grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). Applying this standard, this court has found that group allegations against Bragg Communities, Corvias Military, and Corvias Management satisfied the Federal Rules in factually similar circumstances. *See Page* v. *Corvias Grp., LLC*, No. 5:20-CV-336-D, 2021 WL 4163562, at *5–6 (E.D.N.C. Sept. 13, 2021).

Although the Lohrenzes do not explicitly allege that Defendants acted jointly, their explanation of each Defendant's role in providing housing at Fort Bragg gives Defendants notice of the claims against them. The Lohrenzes contend that Bragg Communities owned the two homes they lived in, Corvias Management acted as the property manager, and Corvias Military provided services for those stationed at Fort Bragg. Am. Compl. ¶¶ 5–7, 15. This explanation— alongside the noncomplex nature of the Lohrenzes' claims—gives Defendants fair notice. *Cf. Page*, 2021 WL 4162562, at *6 (citing *Walker*, 2015 WL 348668, at *3). Thus, the undersigned recommends that the district court decline to dismiss the family's suit on this ground.

## VI.    First Amended Complaint Claims

In their amended complaint, the Lohrenzes contend that all Defendants are liable for negligence, gross negligence, and battery. While they have stated a claim for negligence and gross negligence, the district court should dismiss their battery claim.

## A.    Negligence

The Lohrenzes first allege that Defendants negligently maintained, repaired, and remediated the two residences on Bloom Road. Am. Compl. ¶ 49. To state a claim for negligence in North Carolina, a plaintiff must allege "the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Blackwell* v. *Hatley*, 202 N.C. App. 208, 212, 688 S.E.2d 742, 746 (2010) (quotation omitted).

The Lohrenz family contends that Defendants owed them a non-delegable duty to properly maintain their rental home. Am. Compl. ¶ 51. Defendants allegedly breached this duty by "failing to maintain, repair and remediate defects of which they knew or should have known[,]" including "microbial chemistry contamination." *Id.* ¶ 52. This contamination injured the family members' bodies and damaged their property. *Id.* ¶ 53.

Defendants counter that, in North Carolina, "a landlord has no common law duty to maintain premises occupied by a tenant." Mem. Supp. Second Mot. Dismiss at 10. But this argument is only a half-truth—it ignores Defendants' statutory duty under the RRAA to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." N.C. Gen. Stat. § 42–42(a)(2). North Carolina law also requires landlords to repair "imminently dangerous conditions"— including leaks that give rise to mold growth. *Id.* § 42–42(a)(8). Defendants' myopic reference to the common law does not absolve them of their statutory obligations. *See, e.g.*, *Brooks* v. *Francis*, 57 N.C. App. 556, 559, 291 S.E.2d 889, 891 (1982) (explaining that, after the enactment of the RRAA, "[a] violation of the duty to maintain the premises in a fit and habitable condition is . . . evidence of negligence") (citation omitted).

The Lohrenzes have provided enough facts to allege that Defendants breached duties they owed the family. They have also plausibly linked Defendants' conduct to their damages—both to

11

their property and their persons. Thus, the district court should deny Defendants' motion to dismiss the Lohrenz family's negligence claim. *Cf. Page*, 2021 WL 4163562, at *9 (denying these Defendants' motion to dismiss a negligence claim filed by similarly situated plaintiffs).

## B. Gross Negligence and Punitive Damages

The Lohrenzes also allege that they are entitled to punitive damages because Defendants knowingly leased the two homes despite the many problems limiting their habitability. Am. Compl. ¶ 57. This willful and wonton violation of Defendants' statutory duty to provide habitable housing, the Lohrenzes contend, amounts to gross negligence that caused them harm. *Id.* ¶¶ 58–60.

The North Carolina Supreme Court has explained that "gross negligence" differs from its conventional counterpart because it requires "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Yancey* v. *Lea*, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (quotation omitted). And North Carolina law allows a court to impose punitive damages against a defendant whose "[w]illful or wanton conduct" gives rise to compensatory damages. N.C. Gen. Stat. § 1D-15(A)(3).

North Carolina courts often treat "gross negligence" and "willful and wanton conduct" analogously, *see, e.g.*, *Yancey*, 354 N.C. at 52, but the state's punitive damages statute distinguishes between the two. "Willful or wanton conduct" sufficient to merit punitive damages "means the conscious and intentional disregard of . . . the rights and safety of others" that amounts to "more than gross negligence." N.C. Gen. Stat. § 1D-5(7). And when a gross negligence claim carries with it a prayer for punitive damages, courts must hold plaintiffs to a higher standard than the common law elements of gross negligence alone. *See FDIC* v. *Rippy*,

12

799 F.3d 301, 315 (4th Cir. 2015) (explaining that N.C. Gen. Stat. § 1D-10 only abrogated the common law definition of gross negligence in the context of cases seeking punitive damages).

Thus, pleading requirements for negligent conduct fall into three categories: First is traditional negligence, which the Lohrenzes have alleged. Second is gross negligence absent punitive damages, which is not at issue here. *See, e.g.*, *Rippy*, 799 F.3d at 315 ("Because there is no claim for punitive damages, the traditional common law definition of gross negligence applies."). And third is gross negligence accompanied by a claim for punitive damages, which requires plaintiffs to allege facts that satisfy the requirements of North Carolina's punitive damages statute alongside the elements of gross negligence. *See, e.g.*, *Justice* v. *Greyhound Lines, Inc.*, No. 5:16-CV-132-FL, 2018 WL 1570804, at *4 (E.D.N.C. Mar. 30, 2018) ("[W]illful or wanton conduct lies between . . . gross negligence, and . . . an intentional tort[.]"). The Lohrenz family's gross negligence claim falls into the third category.

In North Carolina, a plaintiff seeking punitive damages from a corporation must plausibly allege that "the officers, directors, or managers of the corporation participated in or condoned the [willful or wonton conduct] giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c); *see also Justice*, 2018 WL 1570804, at *6. Alternatively, state courts have held that a corporation may be liable for punitive damages if its own acts or policies amount to willful or wonton conduct. *See Everhart* v. *O'Charley's, Inc.*, 200 N.C. App. 142, 153, 683 S.E.2d 728, 737 (2009). Under this latter theory of liability, courts have held that a defendant's policy to protect its profits at the expense of public safety justifies imposing punitive damages. *See, e.g.*, *id.* at 155 (holding that a restaurant's policy requiring managers to fill out an incident form before helping customers who need medical attention properly gave rise to punitive damages against the restaurant); *McKiver* v. *Murphy-Brown, LLC*, 980 F.3d 937, 970 (4th Cir. 2020) ("[A] reasonable

13

jury here could conclude that Appellant's own policies reflected conscious and intentional disregard of the safety and wellbeing of others in the interest of protecting the company's bottom line, rendering direct liability applicable.") (citation omitted).

The Lohrenzes contend that Defendants knew about the defects at the Bloom Road homes but still allowed them to move in. Am. Compl. ¶ 57. This—coupled with Defendants' failed remediation attempts and their delay in notifying the family about the test results at 32 Bloom Road—allegedly amounted to a willful and wonton institutional decision "to put profits above safety." *Id.*

Defendants retort that the Lohrenz family's gross negligence claim should be dismissed because it fails to allege that Defendants undertook any action "with the design, purpose, and intent to do wrong and inflict injury." Mem. Supp. Second Mot. Dismiss at 16. This standard does not apply to claims for gross negligence. As Defendants point out, the proper inquiry is whether they took a purposeful action with knowledge that the action disregarded the safety of others. *Id.* at 15 (citing *Yancey*, 354 N.C. at 53).

The Lohrenzes have satisfied both requirements: They allege that Defendants knowingly placed them in "water damaged, microbe infested, insect infested, and . . . contaminated" housing. Am. Compl. ¶ 57. And it is alleged that when Defendants received definitive proof that 32 Bloom Road was unfit for habitation, they allowed the Lohrenzes to ferry between the two Bloom Road homes without warning for two months. *Id.* These allegations suggest an intentional disregard for public safety, and they satisfy the requirements for a gross negligence claim.

Defendants also maintain that the court should toss out the Lohrenz family's claim because their amended complaint does not allege that Defendants' "officers, directors, or managers . . . participated in or condoned" any willful or wanton conduct. Mem. Supp. Second

14

Mot. Dismiss at 19 (quoting N.C. Gen. Stat. § 1D–15(c)). But this argument ignores the theory of direct corporate liability laid out in *Everhart*—when a business's own acts or policies willfully and wantonly disregard public safety, it may be liable for punitive damages. 200 N.C. App. at 153.

Drawing all inferences in the Lohrenz family's favor, the undersigned concludes that they state a claim for gross negligence and punitive damages. The Lohrenzes plausibly allege that Defendants adopted a policy placing servicemembers and their families in contaminated homes to protect Defendants' economic interests. *Cf. Page*, 2021 WL 4163562, at *9 ("[P]laintiffs have plausibly alleged that defendants' conduct was intentional and disregarded plaintiffs' safety, thereby constituting gross negligence or reckless or willful conduct that proximately caused plaintiffs' injuries."). Thus, the district court should deny Defendants' motion to dismiss the Lohrenz family's claim for gross negligence and punitive damages.

### C.    Battery

The Lohrenzes next contend that Defendants are liable for battery because they chose not to disclose the dangers present at the two Bloom Road properties, and the harmful airborne chemicals at the homes caused the family harm. Am. Compl. ¶ 66. To survive a motion to dismiss for battery, a North Carolina plaintiff must allege intent, a harmful or offensive contact, and causation. *Redding* v. *Shelton's Harley Davidson, Inc.*, 139 N.C. App. 816, 821, 534 S.E.2d 656, 659 (2000) (citation omitted). Intent is paramount—liability "hinges on the defendant's intent to cause a harmful or offensive contact." *Andrews* v. *Peters*, 75 N.C. App. 252, 256, 330 S.E.2d 638, 641 (1985) (citation omitted).

Defendants maintain that the Lohrenzes have not pleaded facts sufficient to establish intent. Mem. Supp. Second Mot. Dismiss at 22. The undersigned agrees. Even if Defendants

knew that the Bloom Road homes contained mold, the Lohrenzes do not claim that Defendants leased the properties specifically intending the family to contact the mold's harmful chemistries. Put another way, Defendants took no affirmative act aimed at exposing the Lohrenzes to harm, even if they did allow the family to live in an unsafe environment. Thus, the district court should grant Defendants' motion to dismiss the Lohrenz family's battery claim.

## VII. Proposed Second Amended Complaint Claims

After Defendants filed their second motion to dismiss, the Lohrenzes sought leave to bring several new claims based on the same facts presented in their amended complaint. In their proposed second amended complaint, the Lohrenzes allege that all Defendants violated the UDTPA and the RRAA and breached the terms of the Lohrenzes lease as well as the covenant of good faith and fair dealing. They also contend that Corvias Military has created a private nuisance.

Only some of these claims may proceed. The Lohrenzes have stated a claim under the UDTPA against all Defendants, and their RRAA claim can proceed against Bragg Communities and Corvias Management. They have also stated a breach of contract claim against Bragg Communities. The Lohrenz family's other claims, however, fail to plausibly allege a claim for relief, so they cannot add them to this case.

### A. Unfair and Deceptive Trade Practices Act

The Lohrenz family's first new claim alleges that Defendants violated the UDTPA by marketing and leasing residential housing "that had defects and deficiencies far in excess of what was acceptable and reasonable[.]" Proposed Second Am. Compl. ¶ 76. They also contend that Defendants conducted misleading resident satisfaction surveys and maintained inaccurate

maintenance records to avoid oversight of housing practices that violated the implied warranty of habitability and the RRAA. *Id.*

To state a claim under the UDTPA, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker* v. *Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007) (quotation omitted). The North Carolina Supreme Court has explained that an unfair practice "offends established public policy" or "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* (quotation omitted). And a deceptive practice is one that "has the capacity or tendency to deceive." *Id.* (quotation omitted).

The Lohrenzes allege that Defendants, whose actions affected North Carolina commerce, marketed residential leases for homes that contained unacceptable levels of mold and water damage. Proposed Second Am. Compl. ¶¶ 76, 85. This marketing had the tendency to deceive customers, and the housing it advertised violated North Carolina public policy—including the RRAA. *Id.* ¶¶ 76–77. And if Defendants had been candid about the condition of the Bloom Road homes, the Lohrenzes contend that they would have lived somewhere else. *Id.* ¶ 81. But because they were misled about the habitability of the two homes, the family repeatedly overpaid for their housing and incurred repair and cleaning costs. *Id.* ¶ 84.

Defendants first contend that the court should dismiss the UDTPA claim because it merely repackages the Lohrenzes' breach of contract claim. Mem. Opp'n Mot. File Second Am. Compl. at 10–11. On its own, an allegation that a defendant has breached a contract does not give rise to liability under the UDTPA. *See Ellis* v. *Louisiana- Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (citation omitted). To survive a motion to dismiss, a UDTPA claim premised on

breach of contract must credibly contend that "substantial aggravating circumstances" merit the award of damages. *Id.* (quotation omitted).

Generally, substantial aggravating circumstances involve "forged documents, lies, and fraudulent inducements." *Stack* v. *Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) (collecting cases); *see also Foley* v. *L & L Int'l, Inc.,* 88 N.C. App. 710, 714, 364 S.E. 2d 733, 736 (1988) (affirming UDTPA claim against defendant who kept a client's down payment for seven months while falsely claiming that the car had been ordered); *Mapp* v. *Toyota World, Inc.*, 81 N.C. App. 421, 424, 344 S.E.2d 297, 300 (1986) (upholding UDTPA verdict against car dealer who falsely promised a customer she could return her car if she wasn't satisfied with it). Without aggravating circumstances, even an intentional breach of contract falls outside the ambit of the UDTPA. *See, e.g.*, *Bob Timberlake Collection, Inc.* v. *Edwards*, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006) (citation omitted).

The Lohrenzes allege more than a mere breach of contract. They contend that Defendants "unfairly and deceptively market[ed] lease offerings as coming with excellent customer service, repair, and maintenance, when in fact, that was not the case[.]" Proposed Second Am. Compl. ¶ 76. And they claim that Defendants maintained inaccurate and misleading resident satisfaction surveys and maintenance records to evade inquiry into their housing practices. *Id.* Had the Lohrenzes known about the state of the Bloom Road homes and the Defendants' property management practices ahead of time, they would have lived elsewhere. *Id.* ¶ 81. In other words, the Lohrenzes allege that the Defendants induced them into signing a contract they otherwise would have declined and repeatedly lied to them about the quality of the homes and their property management. Thus, the Lohrenzes have pled the presence of substantial aggravating circumstances.

Defendants next argue that the Lohrenz family's UDTPA allegations fail to satisfy the heightened pleading requirements of Federal Rule 9(b). Mem. Opp'n Mot. File Second Am. Compl. at 11–12. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances" that constitute the fraud. Fed. R. Civ. P. 9(b). Interpreting this Rule, the Fourth Circuit has held that plaintiffs must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson* v. *Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted). But a violation of Rule 9(b) does not always require dismissal— even when the Rule applies, courts should hesitate before dismissing a complaint "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Edmonson* v. *Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (quotation omitted).

Courts disagree about whether all UDTPA claims implicate Rule 9(b). *Compare, e.g.*, *CBP Res., Inc.* v. *SGS Control Servs.*, 394 F. Supp. 2d 733, 739 (M.D.N.C. 2005) (holding that a UDTPA claim based on negligent or fraudulent misrepresentation need not satisfy Rule 9(b)) (collecting cases), *with Topshelf Mgmt.* v. *Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731–32 (M.D.N.C. 2015) (holding that a UDTPA claim based on fraud must be pled with particularity). As the Middle District of North Carolina pointed out in *CBP*, some federal courts have extended Rule 9(b)'s requirements to claims under statutes similar to the UDTPA, largely because deceptive trade practices often "sound in fraud." 394 F. Supp. 2d at 739 (quotation omitted). Others elect not to impose heightened pleading requirements because—unlike claims for fraud—

19

claims alleging deceptive trade practices do not always require plaintiffs to show intent, reliance, or subjectiveness. *Id.* (citations omitted).

But the court need not definitively state whether Rule 9(b) applies to all UDTPA claims. In a recent case involving military residential housing, this court distinguished between UDTPA claims based on deceptive misrepresentations and those alleging unfair practices. *Johnson* v. *Lendlease (US) Pub. P'ships LLC*, No. 7:21-CV-188-D, 2022 WL 2447091, at *15. The court reasoned that the former claims must comply with Rule 9(b) because "a strong correlation exists between a traditional fraud claim and an unfair and deceptive trade practices claim based on detrimental reliance on deceptive misrepresentations, even when the alleged misrepresentations do not constitute fraud." *Id.* But claims alleging unfair practices are different. Because they "sound more broadly than fraud[,]" they do not implicate Rule 9(b). *Id.*

The *Johnson* plaintiffs alleged that the defendants—who provided them housing on a military base—marketed and leased substandard rental units and violated the warranty of habitability and the RRAA. *Id.* Ruling on the defendants' motion to dismiss, this court held that the plaintiffs' contentions alleged "unfair practices" under the UDTPA and therefore fell outside the ambit of Rule 9(b). *Id.*

As the plaintiffs did in *Johnson*, the Lohrenzes contend that Defendants marketed and leased residential housing with excessive deficiencies. Proposed Second Am. Compl. ¶ 76. They also allege that Defendants breached the implied warranty of habitability and the RRAA. *Id.* Thus, the court finds that the Lohrenzes have satisfied the UDTPA's pleading requirements for an unfair practice.[8]

---

[8] And even if Rule 9(b) applies to Plaintiffs' UDTPA claim, the court would be wary of dismissing it—Defendants know the allegations against them, and Plaintiffs have substantial prediscovery evidence suggesting that Defendants' marketing and leasing practices painted the habitability of their rental units in a false light. *See Edmonson*, 922 F.3d at 553; *Johnson*, 2022 WL 2447091, at *15.

20

Finally, Defendants allege that the Lohrenzes' UDTPA claim is time-barred. Mem. Opp'n Mot. File Second Am. Compl. at 12. The statute of limitations for a UDTPA claim runs for four years after the plaintiff's cause of action accrues. N.C. Gen. Stat. § 75–16.2. And under the UDTPA, a cause of action accrues when the violation occurs. *Withers* v. *BMW of N. Am., LLC*, 560 F. Supp. 3d 1010, 1018 (E.D.N.C. 2021).

When a UDTPA plaintiff asserts fraudulent conduct, the violation occurs "at the time that the fraud is discovered or should have been discovered with the exercise of reasonable diligence." *Dreamstreet Invs., Inc.* v. *MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016) (quotation omitted). The undersigned can find no authority definitively stating when a violation occurs under the "unfair practice" theory, but the Fourth Circuit has remarked that it occurs "when the defendant acts in a manner that offends established public policy, is unethical or unscrupulous, and has a tendency to deceive the average consumer." *Ferro* v. *Volvo Penta of the Ams., LLC*, 731 F. App'x 208, 211 (4th Cir. 2018) (citation and internal quotation marks omitted).

The Lohrenzes signed the lease for 32 Bloom Road on March 30, 2018, and they moved to add the UDTPA claim to their complaint on June 24, 2022. Defendants argue that, because their marketing efforts occurred before Major Lohrenz signed the lease, the UDTPA claims are time-barred. Mem. Opp'n Mot. File Second Am. Compl. at 12. But the Lohrenzes allege UDTPA violations beyond Defendants' marketing efforts—they also contend that Defendants violated the Act by receiving payment from the Lohrenzes for substandard housing, conducting misleading surveys, maintaining inaccurate maintenance records, violating the RRAA, and breaching the implied warranty of habitability. Proposed Second Am. Compl. ¶ 76. Some of Defendants' allegedly illegal actions, then, occurred after the Lohrenz family moved in. So even if the statute

21

of limitations began to run when Defendants took each action—and not when Plaintiffs knew or should have known about the action—some of the Lohrenzes' allegations are likely timely.

Defendants counter that the court should only deny the motion to amend insofar as its UTDPA claims "rely on offering, marketing, and leasing activities that took place more than four years before" the proposed second amended complaint was filed. Mem. Opp'n Mot. File Second Am. Compl. at 13. But to address the UDTPA claim in full, the court will need to conduct a factual inquiry into when each of Defendants' potentially unlawful actions took place. While the allegations premised on marketing likely fall outside the statute of limitations, others may survive. This analysis requires discovery, and it is better suited for summary judgment—not a motion to dismiss. *Cf. Hooper* v. *Sachs*, 618 F. Supp. 963, 968 (D. Md. 1985) ("Although a fact-specific inquiry would not be appropriate on a motion to dismiss, it is appropriate . . . on summary judgment."). For now, the court will allow the Lohrenzes to add their UDTPA claim.

### B.     Residential Rental Agreements Act

The Lohrenzes also seek to add a claim alleging that all Defendants violated the RRAA and breached the implied warranty of habitability. Proposed Second Am. Compl. ¶¶ 87–97. The RRAA requires "landlord[s]" to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." N.C. Gen. Stat. § 42–42(a)(2). And a "landlord" is "any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by" the Act. *Id.* § 42–40(3). To state a claim under the RRAA, a plaintiff must allege that the defendant landlord failed to fulfill its statutory obligations. *See Miller* v. *C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 368, 355 S.E.2d 189, 193 (1987).

22

Defendants contend that the court should deny the family's attempt to add this claim for two reasons: First, the Lohrenzes "failed to identify which conditions of the premises were unfit for habitation." Mem. Opp'n Mot. File Second Am. Compl. at 13. And second, even if they have alleged a violation of the RRAA, the Lohrenzes may only bring their claim against Bragg Communities and Corvias Management. *Id.* at 14.

Defendants' first argument is unpersuasive. The Lohrenzes have plainly identified the problems present in the Bloom Road homes—water damage, mold contamination, and failed remediation. Thus, they have met their pleading burden concerning their landlords' failure to abide by RRAA.

But Defendants' second argument fares better. Nowhere do the Lohrenzes support their allegation that Corvias Military is a "landlord" as defined under the RRAA. *See Page*, 2021 WL 4163562, at *8 (dismissing RRAA claims against defendants other than Bragg Communities and Corvias Management). So while the Lohrenzes have stated an RRAA claim against Bragg Communities (the owner of the Bloom Road properties) and Corvias Management (the property manager), they may not bring an RRAA claim against Corvias Military.

### C.     Private Nuisance

The Lohrenzes next contend that one of the Defendants is liable for private nuisance, but it is unclear which Defendant allegedly created the nuisance. In the heading for this claim, the Lohrenzes list Bragg Communities as their target. But the allegations that follow only refer to Corvias Military. *See* Proposed Second Am. Compl. ¶¶ 98–103. The Lohrenzes contend that Corvias Military "misused its ownership interest" in the Bloom Road properties to interfere with their use and enjoyment of them. *Id.* ¶ 101. But Bragg Communities—not Corvias Military—owns the two homes. *Id.* ¶ 15.

Defendants maintain that the court should reject the Lohrenz family's private nuisance count based on this error alone. Mem. Opp'n Mot. File Second Am. Compl. at 14–15. The court agrees. Despite having the opportunity to address their pleading error in a reply brief, the Lohrenzes did not do so. Instead, they argue that the proposed second amended complaint was properly pled, yet they maintain that "the nuisance claim is asserted only against Defendant Bragg Communities[.]" Reply Supp. Mot. File Second Am. Compl at 5, D.E. 52. But they cannot have it both ways—the text of the private nuisance claim makes no allegations against Bragg Communities. Because the Lohrenzes have elected to stand on the text of their proposed second amended complaint, the undersigned construes it as alleging a private nuisance claim against Corvias Military.

And the Lohrenzes have not pleaded facts against Corvias Military sufficient to state a claim for private nuisance. Since the basis for this claim rests on the misuse of ownership interest—and the Lohrenzes do not allege that Corvias Military enjoyed an ownership interest in the Bloom Road properties—their allegations can't get off the ground. *See Thomas* v. *Bragg Cmtys., LLC*, No. 5:22-CV-226-D, 2023 WL 219337, at *6–7 (E.D.N.C. Jan. 17, 2023) (dismissing private nuisance claim against Corvias entities in factually similar case). They may not add a private nuisance claim against Corvais Military to this case.

**D.      Breach of Contract**

The Lohrenzes also want to add a breach of contract claim against all Defendants. Proposed Second Am. Compl. ¶¶ 112–18. In North Carolina, the elements of breach of contract are "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor* v. *Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). The Lohrenzes contend that Defendants "failed to comply with material terms of the lease by failing to ensure the rental

24

homes were fit for human occupancy and by failing to diligently repair and remedy the conditions affecting habitation." Proposed Second Am. Compl. ¶ 115.

Defendants counter that the Lohrenz family's claims against Corvias Management and Corvias Military fail because they were not parties to the family's lease. Mem. Opp'n Mot. File Second Am. Compl. at 17. The undersigned agrees. It is a fundamental principle of law that "a contract cannot bind a nonparty." *E.E.O.C.* v. *Waffle House, Inc.*, 534 U.S. 279, 294 (2002). The Lohrenzes' lease is a contract between themselves and Bragg Communities that lists Corvias Management as the property manager. *See* Lease at 1, 4, 6. Although Corvias Management is an agent under the contract, "this reference does not make Corvias Management a party to the [lease] or liable for Bragg Communities' alleged breach." *Page*, 2021 WL 4163562, at *10.

The Lohrenzes' claim against Corvias Military is even more nebulous—they contend that all Defendants can be held jointly and severally liable, but they provide no support to buttress this argument. And in their reply brief, the Lohrenzes concede that Bragg Communities is the only proper Defendant for this claim. *See* Reply Supp. Mot. File Second Am. Compl. at 7.

The Lohrenz family's lease had only one counterparty: Bragg Communities. Thus, the court denies in part the Lohrenzes' motion to amend, allowing only the breach of contract claim against Bragg Communities to go forward.

### E.    Good Faith and Fair Dealing

Finally, the Lohrenzes wish to bring a claim against all Defendants for breaching the implied covenant of good faith and fair dealing. Proposed Second Am. Compl. ¶¶ 104–11. North Carolina courts generally collapse this claim into a breach of contract claim when they both rely on the same underlying facts. *See, e.g.*, *Cordaro* v. *Harrington Bank, FSB*, 260 N.C. App. 26, 38–39, 817 S.E.2d 247, 256 (2018) ("[W]here a party's claim for breach of the implied covenant

25

of good faith and fair dealing is based upon the same acts as its claim for breach of contract, we treat the former claim as part and parcel of the latter.") (citations and internal quotation marks omitted).

Defendants contend—and the Lohrenzes concede—that the family's good faith and fair dealing claim shares a factual basis with their breach of contract claim. *See* Reply Supp. Mot. File Second Am. Compl. at 7. In response, the Lohrenzes ask only that their breach of contract claim against Bragg Communities be allowed to proceed. *Id.* Having allowed the breach of contract claim against Bragg Communities to move forward, the court will not allow the Lohrenzes to add a distinct claim for breach of the covenant of good faith and fair dealing.

### F.     Prejudice to Defendants' from Amendment

Defendants argue that the court should deny the second motion to amend because, they claim, the Lohrenzes have unduly delayed filing their motion and that allowing them to amend again would prejudice the Defendants. The Fourth Circuit has found that prejudice to the opposing party is a valid reason to deny a motion to amend. *Laber* v. *Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). In assessing "[w]hether an amendment is prejudicial" courts should look to "the nature of the amendment and its timing." *Id.* at 427. An amendment can be considered prejudicial if it "'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'" *Id.* (quoting *Johnson* v. *Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)) (modification in original). But "[a]n amendment is not prejudicial. . .if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* (citing *Davis* v. *Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

The proposed amendments here fall into the latter, non-prejudicial, category. The Lohrenzes seek to add several new claims to their complaint based largely on the facts in the first amended complaint. And since no discovery has taken place yet, the Defendants have a full opportunity to gather and analyze the facts related to this claim. And unlike in *Johnson*, this case is unlikely to go to trial anytime soon. Thus, there is no basis to conclude that Defendants will be prejudiced by the proposed amendment to such an extent that it justifies denying the motion to amend.

Defendants' argument about the family's delay in seeking to amend do nothing to bolster their claims of prejudice. As the Fourth Circuit has noted, "Delay alone. . .is an insufficient reason to deny the plaintiff's motion to amend." *Id.* Even the entry of an adverse judgment does not create an absolute bar to amending a complaint. *Id.* ("[A] district court may not deny such a motion simply because it has entered judgment against the plaintiff[.]"). So absent a showing of material prejudice stemming from a delay in pursuing an amendment, the motion's timing does not provide a basis to deny it.

## VIII. Conclusion

For the reasons discussed, the undersigned grants the motion to amend (D.E. 42) in part and recommends that the district court grant the motion to dismiss (D.E. 28) in part.

Considering the parties' filings holistically, these claims should be allowed to proceed:

1. Negligence (all Defendants);

2. Gross negligence (all Defendants);

3. UDTPA violation (all Defendants);

4. RRAA violation (Bragg Communities and Corvias Management); and

5. Breach of contract (Bragg Communities).

27

The Clerk of Court must serve a copy of this document on each party who has appeared in this action. Any party may file a written objection to its recommendations within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the recommendation that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the recommendations (or a later decision based on the recommendations) reviewed by the Court of Appeals.

Dated: March 31, 2023

Robert T. Numbers, II
United States Magistrate Judge